**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SRINADH YARRA,**

        **Plaintiff,**

v.                                                            Case No: 6:21-cv-1857-PGB-DAB

**ARIAS BOSINGER, PLLC,**

        **Defendant.**
_____/

## ORDER

This cause comes before the Court on Defendant Arias Bosinger, PLLC's Motion to Dismiss (Doc. 20 (the "**Motion**")) and Plaintiff Srinadh Yarra's response thereto (Doc. 21 (the "**Response**")). Upon consideration, the Motion is due to be granted.

**I.    BACKGROUND**[1]

This case stems from an allegation that the law firm Arias Bosinger, PLLC (the "**Defendant**"), acting as a debt collector for a condominium association, violated the Fair Debt Collection Practices Act (the "**FDCPA**") and the Florida Consumer Collection Practices Act (the "**FCCPA**") when it tried to collect payment from Srinadh Yarra (the "**Plaintiff**") for monies allegedly owed.

---

[1] This account of the facts comes from the Plaintiff's First Amended Complaint. (Doc. 19). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiff, a New York resident, purchased a condominium in Florida through a Plan and Trust that he created called Hanuman Heritage Defined Benefit Pension Plan (the "**Plan**") for purposes of tax-exempt retirement savings and medical benefits. (Doc. 19, ¶¶ 4–9). Plaintiff is the sole investment fiduciary and beneficiary of the Plan. (*Id.* ¶ 10).

The certificate of title to the condominium shows that the Plan is the record owner. (*Id.* ¶ 19). Of note, Plaintiff purchased the unit for the purpose of generating rental income to fund his pension plan and medical benefits account based on the provisions set forth in the Plan. (*Id.* ¶ 20). Upon purchase of his condominium, Plaintiff became liable for paying future "assessments" to the Bella Terra Condominium Association ("**Bella Terra**") defined as "a share of the funds required for the payment of Common Expenses." (Doc. 19-7, p. 2). The Bella Terra Declaration defines "Common Expenses" as "all expenses incurred by the [Bella Terra] for the operation, management, maintenance, repair, replacement or protection of the Common Elements and Association Property." (*Id.*).

Plaintiff was instructed to make payments to Defendant while Bella Terra updated its system to ensure that Plaintiff was recorded as the new owner of the property and that auto-payment could be set up through an automated system. (*Id.* ¶¶ 28–29). Defendant is a Florida law firm that uses various means of communication in debt collection matters, including telephone, mail, and internet services both with debtors and their legal representatives in the ordinary course of

2

business. (*Id.* ¶ 15).[2] Auto-pay was never set up, and Plaintiff retained counsel after a dispute over Plaintiff's lack of payment arose. (*Id.* ¶¶ 32–35).

Plaintiff sought relief under the FDCPA and the FCCPA (Doc. 1), and the Court dismissed the Original Complaint (Doc. 1) as a shotgun pleading, ordering the Plaintiff to address certain factual gaps upon repleader. (Doc. 18, p. 4). In compliance, Plaintiff filed the First Amended Complaint (Doc. 19 (the "**First Amended Complaint**")), asserting multiple 15 U.S.C. § 1692 claims and an additional claim under FLA. STAT. § 559.72(9). (*Id.* ¶¶ 56–75). Plaintiff alleges that the Defendant engaged in deceptive practices in violation of the FDCPA and FCCPA when the Defendant stated that late fees and interest would be waived but then failed to do so in a subsequent bill statement. (*Id.* ¶¶ 34–43). The specific counts are as follows: 1) a violation of 15 U.S.C. § 1692; 2) a violation of 15 U.S Code § 1692c(a)(2); 3) a violation of FLA. STAT. § 559.72(9). (*Id.* ¶¶ 56–75).

The Defendant filed the instant Motion to Dismiss (Doc. 20), and Plaintiff replied in opposition. (Doc. 21). As such, this matter is now ripe for review.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[2] Accordingly, they are considered "debt collector(s)" under the FDCPA. 15 U.S.C. § 1692a(6). (*Id.* ¶ 17).

3

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Defendant raises several arguments: the Court finds one of them to be dispositive in the Defendant's favor. Specifically, the obligation to pay a sum of money giving rise to Plaintiff's FDCPA and FCCPA claims is not a "debt" as defined

4

under those acts, so Plaintiff fails to state allege a viable cause of action under either statute.³ On this basis in particular, the Motion to Dismiss will be granted.

Importantly, a "debt" under both "the FDCPA and FCCPA appl[ies] only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010) (emphasis in original). "To this end, courts have consistently required that plaintiffs prosecuting FDCPA claims demonstrate that the underlying property giving rise to the debt relates to personal, family or household purposes; alternatively stated, the debt may not arise from a primarily business purpose." *Williams v. Edelman*, No. 05-60653-CIV, 2005 WL 8154686, at *4 (S.D. Fla. Oct. 6, 2005). When determining whether a property transaction gives rise to consumer debt claims under both the FDCPA and the FCCPA, courts must assess whether the plaintiff's intent *at the time* of *purchase* was for a primarily personal purpose or a business purpose. *See Matos v. Bus. L. Grp., P.A.*, No. 6:18-CV-1105-GAP-DCI, 2022 WL 1422883, at *1 (M.D. Fla. May 5, 2022) (Presnell, J.); *see also In re Cherrett*, 873 F.3d 1060, 1067 (9th Cir. 2017) ("Courts determine the debtor's purpose as of the time the debt was incurred.").

---

3   As the Court finds this issue determinative for the instant Motion, the Court declines to address the parties' other arguments. *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010) ("To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'").

5

This case turns on whether Plaintiff purchased his property with the intent to use it as an investment property for a commercial or business purpose rather than a personal one. *Matos*, 2022 WL 1422883, at *1. When the Court dismissed plaintiff's original complaint as a shotgun pleading to be rectified upon repleader, it specifically directed Plaintiff to "state what the primary purpose of the property was at the time it was purchased" were he to file an amended complaint. (Doc. 18, p. 4). Plaintiff complied and averred that he "purchased the unit to generate rental income to fund his pension plan and medical benefit account" when he filed the First Amended Complaint. (Doc. 19, ¶ 20). Consequently, Defendant argues that this case should be dismissed because condominium assessments and fees that are created in a purely business rental property context do not constitute the kind of "debt" necessary to invoke the FDCPA and FCCPA. (Doc. 20, p. 10). Based on Plaintiff's pleadings, the Court agrees.

Defendant cites the *Matos* case as authority, which the Court finds instructive. *Id*. Dealing with the same issue implicated here, the *Matos* court indicated that "the parties dispute whether, at the time of purchase, [the plaintiff] intended to use the condo unit as a vacation home or as an investment rental property," explicitly holding that "[t]he resolution of this issue determines whether the assessments on the condo unit are consumer debt within the scope of the FDCPA and FCCPA, or commercial debt that falls outside the statutory definition." *Id*. Carefully distinguishing the Eleventh Circuit's general holding that condominium assessments *can* qualify as a "debt" if they arose from a consumer

6

transaction, the *Matos* court concluded that, at the time of purchase, the buyer more likely than not "intended to use the apartment as an investment rental property." *Id.* at *3.[4] [5] As a result, the Court found that "the associated obligation to pay condominium assessments was not for a consumer purpose." *Id.* Here, the facts are even clearer: Plaintiff pled unequivocally that he purchased this property with the intent that it would be used as a rental rather than for his own consumer use. (Doc. 19, ¶ 20). Nothing in the pleadings indicates that Plaintiff ever used or planned to use the property at issue even partially in a personal way. The Court thus does not view the plaintiff's financial obligation with respect to this property as a "debt" that could implicate the FDCPA or FCCPA.

In support of his argument that the transaction at hand was primarily for personal purposes, Plaintiff relies on *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC,* 859 Fed. App'x. 102 (9th Cir. 2021). However, Plaintiff's invocation of this case hinders rather than helps his claim. In *Glawe*, the Ninth Circuit remanded a district court's summary judgment precisely because it found that there *was* a

---

[4] *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 952 (11th Cir. 2016) ("As a result, the homeowners' obligation to pay a fine is a debt because the HOA assessments at issue . . . arose directly from a consumer debt.").

[5] Like the Eleventh Circuit, Florida state courts have held that condominium assessments *can* be but are not necessarily considered a "debt" under the FCCPA. *See e.g., Williams v. Salt Springs Resort Ass'n, Inc.*, 298 So. 3d 1255, 1259 (Fla. 5th DCA 2020) (noting that assessments could be considered consumer debt in part because "under Florida law, a condominium purchase *generally* is a residential property transaction.") (emphasis added). These Florida courts' analyses support the Court's conclusion that, in this case, the FDCPA and FCCPA should not apply—where the condominium purchase is *not* a residential property transaction.

7

genuine dispute as to whether the property at issue was a rental property for purposes of qualifying a debt. *Id.* at 103. The Ninth Circuit specifically highlighted that "[i]n their affidavits, the [plaintiffs] state that they purchased the [property at issue there], initially intending to use it as a retirement home in ten to twelve years, and that they only decided to rent the house out sometime after they purchased it." *Id.* In this case, Plaintiff has, upon specific request, affirmatively averred that he purchased this property with the intention of using it as a rental property to "generate rental income" for his retirement. (Doc. 19, ¶ 20). In other words, Plaintiff's intention at the time of purchase based on his own pleadings was that the condominium be used for business or commercial purposes. (*Id.* at 3–4). The Plaintiff's intent at the time of purchase in this case is thus distinguishable from that of the *Glawe* plaintiffs, who originally intended at the time of purchase to use their property for a personal, consumer purpose. *Glawe*, 859 Fed. App'x. at 103. That is all that matters.[6] Accordingly, Plaintiff's remaining arguments are

---

[6] Plaintiff's argument that the financial obligation at issue is primarily for a "personal" purpose by virtue of the fact that the profits from the property were to be used for a retirement account is similarly unavailing: the Court is hard pressed to believe that Congress would have gone out of its way to specify the boundary between personal and commercial purposes in the statute if it were not interested in drawing the line for moments like this one. By Plaintiff's logic, any businessman could claim that his profits were "personal" the moment he placed them in a Roth IRA or other retirement account. Moreover, this Court is not the first to take this approach. *See Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007), *aff'd in part,* 635 F.3d 401 (9th Cir. 2011) ("Plaintiff has not used either of these rental properties for his personal residence or for any other personal, family or household purpose. Furthermore, Plaintiff cites to no authority supporting the proposition that obtaining rental properties, which he does not occupy, but merely uses to collect rental payments, is still consumer in nature because he uses the properties for retirement planning. Under these facts, Plaintiff's debt is business in nature, not consumer in nature".).

8

unavailing, and the Court's analysis on the issue can end here.[7] The Court thus finds that Plaintiff fails to state a plausible claim for relief under either the FDCPA or the FCCPA. For that reason, dismissal is warranted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 29) is **GRANTED**;

2. The First Amended Complaint is **DISMISSED WITH PREJUDICE**;[8] and

3. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on September 21, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

---

[7] Plaintiff also argues that his purchase of the condominium through a trust somehow bolsters the claim that his financial obligation is primarily personal. (Doc. 21, p. 13). After review of other jurisprudence, the Court agrees with its sister court that this alleged fact cuts the opposite way. *See Nwaizuzu v. Dunlap Gardiner Att'ys at L., LLP*, No. 1:17-CV-3850, 2019 WL 2323611, at *4 (N.D. Ga. Jan. 22, 2019), *report and recommendation adopted,* No. 1:17-CV-03850, 2019 WL 2323586 (N.D. Ga. Feb. 7, 2019) (holding that because the plaintiff "did not own...property in his personal capacity but rather, as trustee to the trusts into which the property had been transferred" it was even more clear that the assessments "were not assessed against Plaintiff personally but were incurred in association with the properties' use for investment and rental income.").

[8] Dismissal with prejudice is appropriate here because Plaintiff cannot plead any additional facts, taken as true, that would alter the outcome of the litigation, rendering any future amendments futile. *See In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017) (holding that dismissal with prejudice is warranted "where future amendments would be futile or unfairly prejudicial.").

9

Counsel of Record
Unrepresented Parties